# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REGINA MORRIS, <br><br> Plaintiff, <br><br> v. <br><br> NEXTEP SYSTEMS, INC. <br><br> Defendant. | Case No. 21 CV 2404 <br><br> District Judge Seeger <br><br> Magistrate Judge McShain |

## ORDER

Pending before the Court is a motion by plaintiff Regina Morris to compel defendant Nextep Systems, Inc., to produce approximately 4,000 emails identified by Nextep in response to plaintiff's discovery requests and proposed search terms. [48].[1] Defendant opposes the motion. [54]. For the following reasons, plaintiff's motion is granted.

## Background

This case is a putative class action in which plaintiff alleges that defendant, a vendor of technology for the hospitality industry, violated the Illinois Biometric Privacy Act (BIPA). [1] 15. Defendant produces touchscreen "self-order kiosks" that allow customers to place their own food orders. [48]. The kiosks also collect and store users' biometric data, including their "facial geometry" or facial features. [*Id.*]. It is this facial-recognition feature–designed to facilitate quicker re-ordering by "recognizing" the past user on a return visit–that is at the heart of this case. Plaintiff alleges that defendant violated BIPA by, *inter alia*, failing to (1) properly inform users that their facial features were being collected, obtained, or stored; (2) inform users of the parameters of the storage of this biometric data; (3) adhere to a publicly available retention schedule and process for destroying the biometric data; and (4) obtain permission for the collection, storage, and dissemination of this data. [1] 16-17. Plaintiff contends that these BIPA violations occurred when she visited a Wow Bao restaurant in Chicago in August 2017; she also alleges that similar violations have likely occurred when other potential class members used defendant's touchscreen kiosks at Wow Bao and other locations in Illinois. [*Id.*] 16-23. Plaintiff seeks to pursue these claims on her own behalf and on behalf of all individuals in Illinois who had

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the blue CM/ECF header placed at the top of the filings.

their biometrics gathered and stored by Nextep from March 2016 to the present. [*Id.*] 2-3.[2]

In November 2021, Judge Seeger referred this case to the undersigned for a settlement conference and instructed the parties that "any discovery must focus on gathering information that would facilitate settlement discussions." [21]. On December 6, 2021, plaintiff served defendant with 51 requests for production (RFPs) and 25 interrogatories. *See* [29] 4; [48-22]. In a February 14, 2022 minute order, Judge Seeger expressed "significant concerns" about the volume of plaintiff's discovery requests, particularly in view of defendant's "willing[ness] to discuss settlement." [30]. Judge Seeger then ordered plaintiff to "identify the 5 document requests and 3 interrogatories that Plaintiff views as the most important." [*Id.*]. In response, plaintiff identified the following discovery requests:

> **RFP No. 11**: All order histories associated with and/or Related to Plaintiff's and Proposed Class Members' Biometric Data collected, obtained, and stored by Your Biometric Devices.
>
> **RFP No. 33**: Documents sufficient to Identify the total number and identities of Proposed Class Members.
>
> **RFP No. 34**: All personnel files or "guest accounts" for Plaintiff and each of the Proposed Class Members.
>
> **RFP No. 38**: All Communications between You and any company Identified in response to Request for Production No. 2 Related To the Biometric Function.
>
> **RFP No. 41**: All Documents and Communications Related to Your capture, storage, use, possession of, access to, obtainment of, disclosure, redisclosure, and/or dissemination of Plaintiff's and Proposed Class Members' personally identifiable information, including but not limited to Biometric Data.
>
> **Interrogatory No. 12:** Identify and Describe any and all personally identifying information, including but not limited to any Biometric Data, of Plaintiff or the Proposed Class Members that You have at any point enrolled, captured, collected, obtained, processed, stored, or used as a result of any Person's use of the Biometric Devices Identified in response to Interrogatory No. 3.

---

[2] In a separate suit pending in the Circuit Court of Cook County, Illinois, plaintiff brought similar BIPA claims directly against Wow Bao. *See* [48] 2 n.1 (the *Wow Bao* litigation). [*Id.*]. The state court has certified a class of plaintiffs that comprises all individuals who used defendant's facial recognition feature at a Wow Bao kiosk in Illinois between 2016 and 2017. [*Id.*]. Morris also serves as the named plaintiff in that case. [*Id.*].

2

**Interrogatory No. 15**: Describe the manner in which You informed Plaintiff and the Proposed Class Members in writing that You were going to capture, collect, otherwise obtain or store their Biometric Data and the specific purpose and length of time for which their Biometric Data was collected, stored, otherwise obtained, or used.

**Interrogatory No. 24**: Identify and Describe any protocols, policies, or procedures You have established or followed during the Relevant Time Period to ensure compliance with BIPA. [*Id.*].

Plaintiff's identification of these discovery requests precipitated a lengthy course of meet-and-confer negotiations over the relevance and proportionality of the requests. *See* [48] 4-9; [54] 8-11. Eventually, and in order to conserve their resources in advance of an anticipated settlement conference, the parties agreed to limit pre-settlement oral discovery to four-hour depositions of plaintiff and defendant's vice president of software development, Brian Leary. [54] 8. Regarding written discovery, plaintiff suggested that, instead of responding in full to each of the eight priority discovery requests, defendant conduct a limited search for emails held by three Nextep custodians that contained any of ten proposed search terms. [48] 4-5. Plaintiff later agreed to narrow the proposed search to seven search terms: Biometric!, BIPA!, Facial!, Foundation7!, Guest account!, Myaccount!, and Wow Bao! [*Id.*] 11. Defendant rejected this proposal, however, because (1) it would take an estimated 95 attorney hours to review the emails responsive to these search terms for relevance and privilege, (2) additional attorney time would be required to produce a privilege log, and (3) the search terms hit on many irrelevant documents. [54] 10-11. Defendant then proposed limiting its review to emails between Nextep and Wow Bao that were sent or received before January 1, 2018. [*Id.*] 11. In support of this proposal, defendant provided "two sworn statements indicating the alleged facial-recognition feature at issue was never available for use by any Nextep customer in Illinois" except "Wow Bao in part of 2016 and 2017." [*Id.*]; *see also* [54-1] 12 (Nextep's response to Interrogatory No. 4 stating that no Nextep customer besides Wow Bao "has ever used the optional, so-called facial recognition capabilities of any kiosk provided by Nextep in Illinois"). Plaintiff rejected this proposal, pointing out that "this case is not limited to just Wow Bao but rather all individuals in the State of Illinois who have had their biometrics collected, stored, and used by Nextep within five years from the date the complaint was filed" [48] 8, and filed the pending motion to compel.

## Legal Standard

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chi.*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's

3

claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021).

"In determining the scope of discovery under Rule 26, relevance is construed broadly and is 'not limited to issues raised by the pleadings[.]'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). At the same time, discovery must be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"The party requesting discovery bears the initial burden to establish its relevancy." *Mendez*, 2020 WL 4736399, at *3. "If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is improper." *Id.* (internal quotation marks omitted).

## Discussion

### A. Parties' Arguments

Plaintiff argues that the search terms and responsive emails are relevant to the eight priority discovery requests and to facilitating settlement discussions. [48] 11. First, plaintiff maintains that the search terms are directly relevant to RFPs 38 and 41, which seek communications between Nextep and other companies that used its biometric software and documents relating to Nextep's use, possession, and dissemination of the biometric data obtained through its software. [*Id.*] 11. This is so, plaintiff contends, because the responsive emails will allow plaintiff to identify additional class members and determine the extent of the biometric information collected and how Nextep uses that information. [*Id.*]. Plaintiff also suggest that this information can be used to "provide direct notice [to the class members] if a settlement was reached." [*Id.*]. Second, plaintiff argues that the emails are relevant to establishing the requirements of class certification. [*Id.*] 13. According to plaintiff, data in the emails will establish that the parties can ascertain the identities of the class members, "which is a critical aspect of both the predominance and manageability steps of class treatment analysis." [*Id.*]. In support, plaintiff emphasizes that she is interested only in a class-wide settlement, and that defendant has not stipulated to any of the requirements for class certification. [*Id.*] 3, 13. Third, plaintiff disputes defendant's assertion that producing the emails would be unduly burdensome. [*Id.*] 13-14. Plaintiff contends that Nextep has produced no evidence to support its undue-burden claim or its further assertion that it would take 90 seconds to review each email in the tranche of documents, for a total of 95 attorney hours. [*Id.*]. On this point, plaintiff emphasizes that defendant is "represented by two large

4

defense firms with an abundance of resources and a $10 million insurance policy is funding its defense." [*Id.*].

Defendant responds that plaintiff is on a "fishing expedition" for additional class members, that gathering and producing the roughly 4,000 emails responsive to the search terms is unreasonably burdensome, and that this discovery will not facilitate settlement efforts. [54] 1. In support, defendant points to two sworn statements it provided to plaintiff that purport to establish that Nextep's facial-recognition devices have not been used by any business in Illinois besides Wow Bao. [*Id.*] 3. Because there are no other class members besides those who were identified in the *Wow Bao* litigation, defendant contends that plaintiff's discovery requests are irrelevant. Regarding undue burden, Nextep maintains that it properly conducted an initial review of the responsive emails and reasonably estimated that, with each document taking 90 seconds to review, it would need to expend 95 attorney hours to review the emails for relevance and privilege–plus additional time to prepare a privilege log. [*Id.*] 13-14. Defendant also insists that the documents are not necessary for settlement. Rather, defendant claims that plaintiff intends to use the data to "identify class members and provide direct notice **if a settlement is reached**." [*Id.*] (emphasis in original). Thus, defendant maintains that email discovery would be necessary, if at all, only after a successful settlement conference. Finally, defendant emphasizes that plaintiff "has already taken discovery of the most likely source of any relevant emails–Wow Bao–in her separate case against Wow Bao." [*Id.*] 3.

## B. Relevance

The Court concludes that the search terms and responsive emails are relevant to the claims and defenses at issue in this case, including the parties' early settlement efforts.

First, the search terms and responsive emails are clearly relevant to identifying members of the potential class. Plaintiff's RFPs 33, 34, 38, and 41 seek information concerning the identities of class members (that is, individuals whose biometric information was gathered by defendant allegedly in violation of BIPA), communications with companies like Wow Bao that deployed Nextep's facial-recognition technology, and any communications relating to Nextep's collection and storage of biometric data. Plaintiff's search terms, in turn, are likely to generate information about the class members and communications between defendant and other entities that used its facial-recognition software. There also appears to be a direct relationship between plaintiff's proposed terms and plaintiff's goal, in RFP 41, to obtain documents regarding the "capture, storage, use, possession of, access to, obtainment of, disclosure, redisclosure, and/or dissemination" of biometric information.

Second, the Court is not persuaded that plaintiff's request should be denied based on defendant's contention that the tranche of responsive emails contains a large amount of irrelevant information, such as advertising materials, news items, or customer receipts. *See* [54] 2, 10. Defendant cites no case holding that a reasonable request for relevant evidence, such as plaintiff's request here, should be denied if the request would also entail the production of incidental or irrelevant material. Nor does defendant explain at what point a request for relevant materials becomes improper based on the amount of incidental or irrelevant material in the data set. Defendant has not shown that plaintiff's request should be denied on this basis. *See Mendez*, 2020 WL 4736399, at *3.

Third, the Court rejects defendant's argument that the emails would be relevant only after the parties reached a settlement. While plaintiff does anticipate using data in the responsive emails to provide direct notice to class members in the event of a settlement, *see* [48] 11, that is not the only way plaintiff intends to use the data. Because plaintiff is interested only in a class-wide settlement, whether she can plausibly show that class certification is warranted will necessarily permeate the parties' settlement discussions. As discussed above, plaintiff has demonstrated that the emails are relevant, at a minimum, to identifying potential class members and how defendant gathers, stores, and uses class members' biometric data. Furthermore, defendant has not stipulated that plaintiff can meet any of Rule 23's certification requirements, and its opposition brief makes clear that it disputes plaintiff's ability to prove that her claim is representative of other class members' claims. *See* [54] 11. The evidence is therefore relevant to issues beyond post-settlement notice to the class.

Finally, the Court rejects defendant's argument that the responsive emails are categorically irrelevant because of the sworn statements–one from Brian O'Leary, *see* [1] 90, at ¶ 6, the other in Nextep's verified response to plaintiff's interrogatories, *see* [51-1] 11-12–declaring that none of Nextep's Illinois customers besides Wow Bao has used the facial-recognition software. At this stage of the case, however, plaintiff "need not rely on the word of [her] opponent and instead is entitled to test [defendant's] assertion through discovery." *Cage v. Harper*, No. 17-cv-7621, 2019 WL 11704171, at *3 (N.D. Ill. Jan. 16, 2019); *see also Sirazi v. Panda Express, Inc.*, No. 08 C 2345, 2009 WL 4232693, at *3 (N.D. Ill. Nov. 24, 2009) (rejecting argument that "a request for information that seeks to probe the facts underlying an opponent's case is impermissible because it constitutes, to use the time-worn phrase, a 'fishing expedition'"). The fact that these statements were made under oath does not change the result, as "[t]he presence of the oath, as long and bitter experience teaches, does not ensure that mistake or perjury has or will not occur." *H Guys, LLC v. Halal Guys Franchise, Inc.*, No. 19 C 4974, 2020 WL 3578026, at *2 (N.D. Ill. July 1, 2020).

For these reasons, the Court concludes that the emails sought by plaintiff are relevant to the claims and defenses in this case, including issues relating to the parties' settlement efforts.

6

### C. Proportionality

The Court also concludes that plaintiff's discovery request is proportional to the needs of the case as the parties move toward a potential settlement conference. Although the burden is on defendant to show that plaintiff's request is disproportionate to the needs of the case, *see Mendez*, 2020 WL 4736399, at *3, defendant's opposition brief does not make a serious effort to show how the Rule 26(b)(1) factors weigh in favor of denying plaintiff's request. *See* [54] 13-15. The only proportionality factor that defendant explicitly addresses is the cost and burden of producing the emails, but even that factor does not weigh so heavily in defendant's favor as to justify denying plaintiff's request for relevant evidence.

The first Rule 26 factor–the importance of the issues at stake in the action– requires the Court to examine "the significance of the substantive issues, as measured in philosophic, social, or institutional terms." Fed. R. Civ. P. 26 advisory committee's note. The Committee Note suggests that courts should closely scrutinize discovery requests in "cases in public policy spheres, such as employment practices, free speech, and other matters" because such cases often "seek[ ] to vindicate vitally important personal and public values" and thus have "importance far beyond the monetary amount involved." *Id.* This case, which is predicated on Illinois's BIPA–the first-of-its-kind statute in the nation to address biometric privacy concerns, *see* Neace, *Biometric Privacy: Blending Employment Law with the Growth of Technology*, 53 UIC J. MARSHALL L. REV. 73, 73-74 (2020)–appears to implicate these kinds of important values. Moreover, plaintiff is pursuing this case on a class-wide basis, in which case a larger number of individuals stand to benefit if plaintiff prevails. The Court therefore concludes that this factor weighs modestly in favor of allowing plaintiff's discovery requests.

The second proportionality factor–the amount in controversy–does not weigh in favor of either side's position. Because neither side's brief offers a specific or even "back of the envelope" calculation of the damages at issues, the Court is unable to assess how this factor impacts the pending discovery dispute.

The Court gives more weight to the third proportionality factor: the parties' relative access to information. There is no dispute that the emails are solely in the hands of the defense, which "weighs in favor of more liberally providing materials to [p]laintiff." *Prince v. Kato*, No. 18 C 2952, 2020 WL 1874099, at *5 (N.D. Ill. Apr. 15, 2020). Defendant maintains that plaintiff has access to much relevant evidence based on the discovery conducted in the *Wow Bao* litigation, but this argument ignores plaintiff's representation that a confidentiality stipulation bars the parties from using evidence developed in that case in any other matter. [48] 4 n.2; *see also* [48-3] 2. Indeed, defendant offers no response to this point in its briefing. The Court therefore concludes that the parties' relative access to information weighs in favor of granting the motion.

7

Next, the Court finds that the fourth proportionality factor–the parties' comparative resources–does not favor either side. On the one hand, defendant appears to be a reasonably sophisticated commercial entity that, as plaintiff emphasizes, is represented by two law firms and is covered by a $10 million insurance policy. [48] 8. On the other hand, plaintiff is represented by competent counsel who, during their representation of plaintiff in the *Wow Bao* litigation, have already obtained class certification.[3] The Court does not see any imbalance in power or resources that would make this factor weigh in favor of either side.

The fifth proportionality factor–the importance of the discovery in resolving the issues at stake—favors plaintiff. As already discussed, plaintiff is pursuing a class-wide settlement, and defendant–while apparently open to class-wide settlement negotiations–has not stipulated to any of the class-certification requirements and actively disputes the representativeness factor. If plaintiff wishes to obtain a class-wide settlement, it is incumbent upon her, as the purported class representative, to at least make a convincing showing that she can identify the class members, establish that common issues of law or fact predominate, and demonstrate that her own claim is representative of the other members' claims. *See* Fed. R. Civ. P. 23(a)(1)-(3). Plaintiff's discovery request seeks information that is relevant to establishing these criteria–and thus to her settlement position. Accepting defendant's position, in contrast, would limit the scope of plaintiff's discovery–and thus the scope of any settlement agreement–to only those individuals who experienced a BIPA violation at a Wow Bao kiosk. But plaintiff's allegations sweep more broadly than individuals whose BIPA rights were violated at a Wow Bao restaurant, and the discovery rules permit plaintiff to test defendant's assertions that Wow Bao was the only Nextep customer that deployed the facial-recognition software at issue. *See Cage*, 2019 WL 11704171, at *3; *H Guys,* 2020 WL 3578026, at *2; *Sirazi*, 2009 WL 4232693, at *3. For these reasons, the Court finds that the fifth factor supports granting plaintiff's motion.

Finally, the sixth factor–the burden of production compared to the potential benefits of the discovery–does not weigh decidedly (or even significantly) in defendant's favor. The Court accepts defendant's estimate that it will take 90 seconds to review each email responsive to plaintiff's search terms, for a total of 95 attorney hours. *See* [54-1] 2-5. Defendant also represents that it (1) incurred $868 in e-discovery costs through April 2022 to store the emails and use an e-discovery platform to conduct a preliminary assessment of the emails, and (2) expects to incur $27,600 "in costs alone to store, review, and produce" the emails. [54-1] 5, at ¶¶ 24, 26. But defendant offers the Court no basis to conclude that this burden and costs are disproportionate to the benefits of the discovery. For one thing, 95 hours amounts to only two-and-a-half weeks of attorney work (assuming that the task is handled by a single attorney working only forty hours per week). Courts in this District have

---

[3] Plaintiff is represented by the same attorneys in this case and the *Wow Bao* litigation.

concluded that this is not an undue burden, and this Court agrees–especially given the resources available to defendant (*i.e.,* representation by two law firms and the existence of a $10 million insurance policy). *See Mervyn v. Atlas Van Lines, Inc.*, No. 13 C 3587, 2015 WL 12826474, at *6 (N.D. Ill. Oct. 23, 2015) ("two weeks of active work to provide relevant data that Atlas is required to produce under the federal rules of evidence is not unduly burdensome"). For another, the benefits of the discovery are unlikely to be trivial; rather, the responsive emails may provide valuable information about plaintiff's ability (or inability) to demonstrate that class certification is warranted in this case, which in turn will facilitate the parties' discussions as to the propriety of a class-wide settlement.

For these reasons, the Court concludes that plaintiff's discovery request is proportional to the needs of the case and the parties' settlement efforts.

## Conclusion

For the reasons set forth above, plaintiff's motion to compel [48] is granted. Defendant shall produce the emails and any related privilege log by August 31, 2022. A joint status report is due on September 14, 2022, to update the Court on whether and when the parties expect to be in a position to schedule a settlement conference with the Court.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 1, 2022**