**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| REGINA MORRIS, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-02404 |
| *Plaintiffs,* | Honorable Steven C. Seeger |
| v. | |
| NEXTEP SYSTEMS, INC., | |
| *Defendant.* | |

**PLAINTIFF'S UNOPPOSED MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ............................................................................................... iv

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

       A.     The Illinois Biometric Information Privacy Act. ...................................... 2

       B.     Plaintiff's Allegations and Procedural History. ........................................ 4

III.   TERMS OF THE SETTLEMENT AGREEMENT ............................................. 6

       A.     Class Definition. ...................................................................................... 6

       B.     Settlement Payments. ............................................................................... 6

       C.     Prospective Relief. ................................................................................... 7

       D.     Payment of Settlement Notice and Administrative Costs. ....................... 8

       E.     Payment of Attorneys' Fees, Costs, and Incentive Award. ..................... 8

       F.     Release of Liability. ................................................................................. 8

IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
       SETTLEMENT PURPOSES ................................................................................. 9

       A.     The Numerosity Requirement is Satisfied. ........................................... 10

       B.     Common Issues of Fact and Law Predominate. .................................... 10

       C.     The Typicality Requirement is Satisfied. .............................................. 12

       D.     The Adequacy Requirement is Satisfied. .............................................. 12

       E.     A Class Action is a Superior Method of Resolving the Controversy. ... 16

       F.     The Class Is Ascertainable. ................................................................... 19

V.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ......... 19

VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......... 20

A.     Plaintiff and Proposed Class Counsel Have Adequately Represented the Settlement Class. ................................................................................................................ 21

B.     The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties. ........................................................................................................................ 25

C.     The Settlement Treats All Settlement Class Members Equally. ........................... 27

D.     The Relief Secured for the Settlement Class Is Adequate and Warrants Approval. 28

     1.   The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval. ............................................................................. 28

     2.   The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval. ....................................................................... 30

     3.   The terms of the requested attorneys' fees are reasonable. ........................... 31

VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE .................................................................................................................... 33

VIII.        CONCLUSION ................................................................................................... 35

# **TABLE OF AUTHORITIES**

## **Cases**

*Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350 (N.D. Cal. May 6, 2021) ............... 2

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 ................. 27

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................... 10, 11

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455 (2013) .......................................... 10

*Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551 (N.D. Ill. 2015) ................................. 11, 21

*Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018) ...................................................... 14

*Bedford v. Lifespace Communities, Inc.*, No. 1:20-cv-04574 (N.D. Ill.) ...................................... 18

*Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360 (7th Cir. 2015) ...................................................... 12

*Bernal v. NRA Group, LLC*, 318 F.R.D. 64, (N.D. Ill. 2016) .................................................. 17, 18

*Bruhn v. New Albertson's*, 2018-CH-01737 (Cir. Ct. Cook Cty. Jan. 30, 2020)......................... 17

*Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty. June 25, 2018 ..... 2, 29

*Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, dkt. 57 (N.D. Ill. Sept. 10, 2020) ........................................................................................................................................... 39

*Cothron v. White Castle System, Inc.*, 477 F. Supp. 3d 723 (N.D. Ill. 2020) .............................. 17

*Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-8033, dkt. 103 (N.D. Ill. May 31, 2018) ...................................................................................................................................... 34

*Doporcyk v. Roundy's Supermarkets*, 2017-CH-08092 (Cir. Ct. Cook Cty. Jun. 9, 2017) .... 16, 17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)..................................................................... 41

*Fisher v. HP Property Management, LLC, et al.*, 2021 IL App (1st) 201372.............................. 18

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ..................................................................... 25

*Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ..... 35

*Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) ................... 26

*Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ............................................................................................................................... 35

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ......... 25

*In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011) ...................................... 36, 37

*In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-3747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ......................................................................................................... 7, 36

*In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099 ............................... 29

*In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .................................................................................. 1

*In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013) ....................................................................................................... 37

*Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284 (N.D. Ill. 2005) ................................ 20

*Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546 ......... 28

*Kusinski v. ADP, LLC.,* 2017-CH-12364 (Cir. Ct. Cook Cty., February 10, 2021) ................ 8, 29

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .................................................................. 28

*Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645 ....................................................... 17

*Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty) .............................. 2, 29

*Mosby v. The Ingalls Memorial Hospital, et al.,* 2022 IL App (1st) 200822 (Feb. 25, 2022) ...... 18

*Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) ................................................................................................................................. 13

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) .................................... 11, 22, 23, 36

*Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485 (N.D. Ill. 2012) ......................................... 15

*Prelipceanu v. Jumio Corp.*, 2018-CH-15883(Cook Cnty. July 21, 2020) ............................. 8, 29

*Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065 (E.D. Wis. June 11, 2014) ..... 21

*Regina Morris, et al. v. Wow Bao LLC, Wow Bao Franchising LLC and Lettuce Entertain You Enterprises, Inc.*, Case No. 2022-196493 ........................................................................... 6

*Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197 (Ill. 2019) ................................................. 30

*Rosenbach v. Six Flags Ent. Corp.*, 2016-CH-00013 (Cir. Ct. Lake Cnty. May 14, 2021).......... 30

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)........................................ 37, 38

*Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289............................................. 32

*Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016)................. 8

*Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ..................................................................................................................... 25, 27, 32

*Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)............................................................. 14

*Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859 (N.D. Ill. 2014) ............................................. 15

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)................................................ 12, 22

*Svagdis v. Alro Steel Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cnty.)............................................ 40

*Tims v. Black Horse Carriers, Inc..*, 2021 IL App (1st) 200563 ................................................. 17

*Toney v. Quality Res., Inc.*, 323 F.R.D. 567 (N.D. Ill. 2018) ....................................................... 23

*Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013) .............................................................................................................................. 37

*Wal-Mart v. Dukes*, 564 U.S. 338 (2011) ................................................................................... 12

*Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) ...................................... 39

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .......................................................................................................................................... 31

*Young v. Rolling in the Dough, Inc*, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020)......................... 32

*Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (Cir. Ct. Cook Cnty.) ................. 40

*Ziemack v. Centel Corp.*, 163 F.R.D. 530 (N.D. Ill. Sep. 25, 1995)....................................... 14, 15

**Statutes**

740 ILCS 14/1, *et seq.* ...................................................................................................... 1

740 ILCS 14/15(a) ............................................................................................................ 4

740 ILCS 14/15(b) ............................................................................................................ 4

740 ILCS 14/15(d) ............................................................................................................ 4

740 ILCS 14/20 ................................................................................................................. 4

740 ILCS 14/20(1) ............................................................................................................ 23

740 ILCS 14/5 ................................................................................................................... 3

Fed R. Civ. P. 23 ........................................................................................................ 10, 20

Fed. R. Civ. P. 23(a) ................................................................................................. passim

Fed. R. Civ. P. 23(b) ............................................................................... 12, 20, 21, 22

Fed. R. Civ. P. 23(c) ................................................................................................. 41, 42

Fed. R. Civ. P. 23(e) ................................................................................................. passim

Fed. R. Civ. P. 23(g) ........................................................................................................ 24

## Other Authorities

2 NEWBERG ON CLASS ACTIONS § 4:72 (5th ed.) ........................................................ 22

4 NEWBERG ON CLASS ACTIONS § 13:1 (5th ed.) ................................................. 24, 25

4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.) ................................................... 38

5 NEWBERG ON CLASS ACTIONS § 15:83 (5th ed.) ................................................... 40

Ill. House Transcript, 2008 Reg. Sess. No. 276 .......................................................... 3

# I. <u>INTRODUCTION</u>

Plaintiff Regina Morris ("Plaintiff") brought this case against Defendant Nextep Systems, Inc. ("Defendant" or "Nextep") (collectively, the "Parties") under the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Plaintiff alleges that Nextep violated BIPA by collecting, otherwise obtaining, and storing the biometric identifiers and/or biometric information (collectively referred to herein as "biometric data") of over a thousand Illinois Wow Bao restaurant customers through its facial recognition self-order kiosks without first providing them the requisite disclosures or obtaining informed written consent. After extensive fact discovery (including production of thousands of pages of documents and depositions) and a settlement conference conducted by the Court—the Parties have reached a class-wide settlement that, if approved, will provide outstanding monetary relief to the Settlement Class.[1] Nextep has agreed to pay $616,050.00 into a non-reversionary Settlement Fund to be distributed to the Settlement Class. Each Settlement Class Member who files a valid Claim Form will be entitled to a *pro rata* share of the Settlement Fund, which, assuming a claims rate of 10 to 20%, will amount to payments of approximately $1,147 to $2,295 each after costs and any fees are deducted.

When compared against other privacy cases, this Settlement provides an exceptional amount of monetary relief to Class Members. Privacy cases have frequently settled for very little monetary relief, if any. *E.g.*, *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-

---

[1] The capitalized terms used in this motion are those used in the Class Action Settlement Agreement and Release (the "Settlement," "Settlement Agreement," and/or "Agreement"), attached hereto as Exhibit 1.

05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs). Although statutory damages are available, this has happened in BIPA settlements too. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty. June 25, 2018) (providing only credit monitoring). Furthermore, other BIPA settlements have capped monetary relief at a certain amount with the inevitable remaining settlement funds reverting to the defendant. *E.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty) ($270 per claimant with credit monitoring, reverting funds to defendant).

Given the exceptional relief proposed by the Settlement, the Court should not hesitate to find that the Settlement is well within the range of possible approval. Accordingly, Plaintiff respectfully requests that the Court grant her motion for preliminary approval in its entirety, certify the proposed Settlement Class, appoint her attorneys as Class Counsel, direct that the proposed Notice be disseminated to the Settlement Class, and set a Final Approval Hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Illinois Biometric Information Privacy Act.

In the early 2000s, a company called Pay By Touch began installing fingerprint-based checkout terminals at grocery stores and gas stations in major retailers throughout the State of Illinois to facilitate consumer transactions. (Class Action Complaint, ("Compl."), dkt. 1 ¶¶ 11–12.) The principle was simple: swipe your credit card and let the machine scan your finger, and the next time you buy groceries or gas, you will not need to bring your wallet—you will just need to provide your fingerprint. However, by the end of 2007, Pay By Touch had filed for bankruptcy. (*Id.* ¶ 12.) Thereafter, Solidus, Pay By Touch's parent company, began shopping its database of

Illinois consumers' fingerprints as an asset to its creditors and a public outcry erupted.[2] Though the bankruptcy court eventually ordered Pay By Touch to destroy its database of fingerprints (and their ties to credit card numbers), the Illinois legislature took note of the grave dangers posed by the irresponsible collection and storage of biometric data without any notice, consent, or other protections. *See* Ill. House Transcript, 2008 Reg. Sess. No. 276.

Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information,"—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—in 2008, the Illinois legislature unanimously enacted BIPA to provide individuals recourse when companies fail to appropriately treat their biometric data in accordance with the statute. (*See* Dkt. 1 ¶ 13; 740 ILCS 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . "

740 ILCS 14/15(b). BIPA also establishes standards for how companies must handle Illinois consumers' biometric data, requiring companies to develop and comply with a written policy establishing a retention schedule and guidelines for permanently destroying biometric data. 740

---

[2] *See, e.g.*, Meg Marco, *Creepy Fingerprint Pay Processing Company Shuts Down*, CONSUMERIST, available at https://goo.gl/rKJ8oP (last accessed Nov. 1, 2021); Matt Marshall, *Pay By Touch In Trouble, Founder Filing For Bankruptcy*, VENTURE BEAT, available at http://goo.gl/xT8HZW (last accessed Nov. 1, 2021).

ILCS 14/15(a). Furthermore, BIPA prohibits companies from disclosing, redisclosing, or disseminating biometric data except with consent or under limited circumstances. 740 ILCS 14/15(d). To enforce the statute, BIPA provides a civil private right of action and allows for the recovery of statutory damages in the amount of $1,000 for negligent violations—or $5,000 for reckless or intentional violations—plus costs and reasonable attorneys' fees. *See* 740 ILCS 14/20.

### B.     Plaintiff's Allegations and Procedural History.

Plaintiff originally filed this case against Nextep on March 9, 2021, in the Circuit Court of Cook County, Illinois. In her Complaint, Plaintiff alleges Nextep, a private company that provides hospitality technology to companies across the country, urged its customers, including Wow Bao restaurants in Illinois, to implement its biometric tracking system (inclusive of Nextep's software) through self-order facial recognition kiosks that use individuals' facial geometries as a means of authentication for food and beverage purchases, ultimately promoting faster checkouts and higher sales volume. (Dkt. 1 ¶ 2.) Plaintiff further alleges she was a customer of Wow Bao in 2017 and used a Nextep facial recognition self-order kiosk that allegedly captured and stored her facial biometrics to save and recall her future orders. (*Id.* ¶¶ 38-39.) Plaintiff alleges her biometric data (*i.e.,* facial geometry) was subsequently transferred and stored to a cloud database that was hosted and administered by Nextep. (*Id.* ¶¶ 26-29, 40.) However, before obtaining and storing her biometric data, Plaintiff alleges Nextep failed to: (1) develop and adhere to a publicly available retention schedule or guidelines for permanent destruction her biometric data, as required by BIPA; (2) inform her in writing of the purpose(s) and length of time for which her biometric data was being collected, stored, and used; (3) provide Plaintiff (nor did she execute) a written release for Nextep to collect, store, or use her biometric data, as required by BIPA; or (4) ask for, nor did

4

she give, her consent before disclosing, redisclosing, or otherwise disseminating her biometric data to a third party, as required by BIPA. (*Id.* ¶¶ 5, 30–35, 39–43.)

Nextep subsequently removed the case to this Court and answered on May 26, 2021, asserting 23 affirmative defenses. (Dkt. 12.) Following Nextep's answer, Plaintiff issued written discovery, including interrogatories and requests for production of documents, as well as her Rule 26(a) Initial Disclosures. Thereafter, Nextep moved for phased discovery (dkt. 29), which was fully briefed (dkts. 32, 36), and Plaintiff moved for a status hearing, which Nextep responded in opposition. (Dkts. 40, 41.) Both motions were denied without prejudice. (Dkt. 44.)

On May 20, 2022, Plaintiff filed a motion to compel discovery to which Nextep responded to and was granted by the Court on August 1, 2022. (Dkts. 48, 54, 56.) On October 3, 2022, Plaintiff filed in the Circuit Court for the County of Oakland Michigan a motion to enforce a subpoena issued to Nextep as a third-party to the *Wow Bao* litigation, which matter is captioned *Regina Morris, et al. v. Wow Bao LLC, Wow Bao Franchising LLC and Lettuce Entertain You Enterprises, Inc.,* Case No. 2022-196493.

Thereafter, on October 5, 2022, the Court reviewed the Parties' Joint Statement and Proposed Case Calendar, granted a short extension of all fact discovery, and set a fact discovery deadline of November 18, 2022. At that time, the Court also set a dispositive motion deadline, including a motion for class certification, for December 2, 2022. (Dkt. 61.)

On November 15, 2022, after exchanging their respective settlement position statements, the Parties participated in their first settlement conference with Magistrate Judge McShain. (Dkt. 63.) Despite the Parties not reaching an agreement, they agreed to continue discussing a possible resolution.

After Plaintiff sought the Court's intervention on a couple discovery disputes, on December 2, 2022, Nextep filed a Motion for Summary Judgment (dkt. 79) and Plaintiff filed a [Renewed] Motion for Class Certification. (Dkt. 84.) However, neither motion was briefed. On December 19, 2022, the Parties participated in a second settlement conference with Magistrate Judge McShain but were again unable to reach an agreement at that time but again agreed to continue discussing a possible resolution. (Dkt. 88.) Finally, after dozens of phone calls and emails, the Parties' continued efforts to resolve this matter ultimately culminated in an agreement to resolve this matter in principle on January 11, 2023, for which they now seek the Court's approval. (Dkt. 91.)

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Class Action Settlement, and are briefly summarized here:

### A.    Class Definition.

The proposed Settlement Class includes all individuals, including Named Plaintiff, in the State of Illinois who used facial recognition at an ordering kiosk sold by Nextep at a Wow Bao store, including, but not necessarily limited to (1) 835 North Michigan Avenue, (2) 1 West Wacker Blvd, (3) 225 North Michigan Avenue, from March 9, 2016, through the date of preliminary approval. (*See* Settlement Agreement ¶ 67.) Excluded from the Settlement Class are: (1) the Court and members of their families; (2) persons who properly execute and file a timely request for exclusion from the Class; and (3) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released. (*Id.*)

### B.    Settlement Payments.

The Settlement provides that Nextep will establish a non-reversionary Settlement Fund of $616,050.00, from which each Settlement Class Member who submits a valid Claim Form will be

entitled to a *pro rata* portion after payment of Administrative Fees, attorneys' fees and out-of-pocket costs, and any Service Award, if approved by the Court. (*Id.* ¶¶ 62, 75-79.)

The parties reached the $616,050.00 figure based on Nextep's good-faith representation that there are 1,369 Settlement Class Members. Based on claims rates in similar BIPA class settlements, which typically range between 10-20%,[3] Class Counsel estimate that each Class Member who submits a claim will receive a net payment of approximately $1,147 to $2,295. Any uncashed checks within 90 calendar days after the date of issuance will, subject to Court approval, be provided as *cy pres* to be selected by the Parties and approved by the Court. (*Id.* ¶¶ 79, 109.) No portion of the Settlement Fund will revert back to Nextep. To the extent that a check issued to Settlement Class Members is not cashed or negotiated within 45 days after issuance, the Settlement Administrator will confirm and/or obtain a valid mailing address and will send a reminder postcard to the affected participating Settlement Class Member. (*Id.* ¶ 109.)

**C.     Prospective Relief.**

Defendant has provided a declaration confirming the kiosks at issue were not used in Illinois after 2017. Defendant agrees to delete and cease retaining, within a reasonable time, but no later than 90 days, after the full execution and final approval of the Settlement Agreement, any customer data received from the Wow Bao kiosks, provided Plaintiff and the defendants in the *Wow Bao* matter stipulate and agree that such destruction will not constitute spoliation or otherwise violate any contractual, legal, or equitable obligation to store or maintain such data, including

---

[3] *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-3747-JD, 2021 WL 757025, at *1 (N.D. Cal. Feb. 26, 2021) (22% claims rate, class size of 6.9 million); *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (15% claims rate, class size of 37,822); *Kusinski v. ADP LLC*, 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) (13% claims rate, class size of 320,000); *Thome v. NOVAtime*, No. 19-cv-6256, dkt. 90 (10% claims rate, class size of 68,213); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883(Cook Cnty. July 21, 2020) (5% claims rate, class size of 260,000).

because such data has been produced to Plaintiff in the *Wow Bao* litigation. Nextep's counsel will provide Plaintiff's counsel a confirmation email once done.

### D. Payment of Settlement Notice and Administrative Costs.

Settlement notice and all Administrative Fees, including the costs of providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing Settlement Payments, related tax expenses, fees of the escrow agent, and other such related expenses, will be paid from the Settlement Fund. (*See* Settlement Agreement ¶ 33.)

### E. Payment of Attorneys' Fees, Costs, and Incentive Award.

Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. (*Id.* ¶ 99.) Class Counsel will file an unopposed Fee Petition seeking approval of the award of attorneys' fees and litigation costs relating to their representation of the Settlement Class as well as an award for Administrative Fees. (*Id.* ¶¶ 98-99.) Class Counsel's Fee Petition shall seek an award of attorneys' fees not to exceed 35% of the Settlement Fund plus reasonable out-of-pocket litigation costs. (*Id.* ¶ 99.) Defendant has also agreed to pay Plaintiff a Service Award in the amount of $10,000 from the Settlement Fund, subject to Court approval, in recognition of her efforts as Class Representative. (*Id.*)

### F. Release of Liability.

In exchange for the relief described above, the Settlement Class Members who do not opt out shall release, relinquish, and give up any and all actual, potential, filed, unfiled, known or unknown claims, suits, actions, controversies, demands, and/or causes of action arising under BIPA, at common law, or any other privacy-related statute, relating to the use of facial recognition at Wow Bao stores in Illinois from March 9, 2016 through the present. (*Id.* ¶ 56.) However, nothing in the release of claims will release any claims against the defendants in the case of *Morris v. Wow*

*Bao, LLC et al.*, Case No. 17-CH-12029, currently pending in the Circuit Court of Cook County, Illinois. (*Id.*) The Released Parties include Nextep Systems, Inc., Global Payments Inc., and all related entities as fully described in the Settlement Agreement. (*Id.* ¶ 57.) However, for the avoidance of doubt, Wow Bao, LLC, Wow Bao Franchising, Lettuce Entertain You Enterprises, Inc., as well as their parents, subsidiaries, divisions, assigns, predecessors, successors, holding companies, shareholders, principals, owners, members, trustees, administrators, executors, directors, officers, managers, board members, attorneys, insurers, reinsurers, underwriters, lenders and/or outside vendors, including but not limited to any entity that manufactured, sold, or otherwise provided Nextep Systems, Inc. with any Biometric System at issue in this lawsuit, or any portion thereof, whether software or hardware, are not considered released parties. (*Id.*)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Before the Court can preliminarily approve the proposed Settlement and direct notice to the Settlement Class, it must certify the class for settlement purposes, which requires a finding that the Court "will likely be able to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). District courts are given broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

To merit certification, the Settlement Class must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, because the Settlement releases claims for money damages, the Settlement Class must also satisfy the requirements of Rule 23(b)(3): that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Amchem*, 521

U.S. at 615–16. Finally, a certified class must be ascertainable; that is, "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed Settlement Class satisfies all the Rule 23(a) and 23(b)(3) prerequisites and is ascertainable, and thus, should be certified for settlement purposes.

### A.    The Numerosity Requirement is Satisfied.

A class action may proceed when the proposed class "is so numerous as to render joinder impractical." Fed R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises 40 or more people. *See*, *e.g.*, *id.* (certifying a class of 120 members). Here, the Settlement Class includes 1,369 members, and the numerosity requirement is easily met.

### B.    Common Issues of Fact and Law Predominate.

Rule 23(a)(2) instructs that a class may be certified only if there exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Where, as here, the class seeks monetary relief, the common questions must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). *See also Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately."). Common questions are those "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common

10

*answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted). As such, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted). When "the defendant's allegedly injurious conduct differs from plaintiff to plaintiff . . . no common answers are likely to be found." *Id.* But when "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," class treatment is appropriate. *Id.*

Here, common issues of law and fact certainly predominate. Plaintiff's and the proposed Settlement Class's claims are based upon the same common contention and course of alleged conduct by Nextep: that it allegedly violated BIPA by collecting, otherwise obtaining, storing, and disclosing the Settlement Class's biometric data without obtaining informed written consent or establishing and abiding by a publicly-available retention policy. Further, it is alleged to have done so in the same manner for every member of the class—by collecting, otherwise obtaining, storing, and disclosing the biometric data of Illinois Wow Bao restaurant customers through its facial recognition self-order kiosks without first providing them the requisite disclosures or obtaining informed written consent. The core factual and legal issues in this lawsuit are therefore common ones.

Because answering each of these questions would resolve all Class Members' claims in one stroke, and no individualized issues (to the extent there are any) could defeat this overwhelming commonality, predominance is satisfied. *See Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *9 (N.D. Ill. Aug. 1, 2018) (predominance requires that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating individual issues.") (internal quotations omitted).

**C.      The Typicality Requirement is Satisfied.**

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Where a named plaintiff's claim "arise[s] from the same events or course of conduct that gives rise to the putative class members' claims," typicality is satisfied. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). In other words, when the basis of the suit is the defendant's systematic business practices toward the named plaintiff and the members of the proposed class, typicality is generally satisfied.

Here, there is nothing separating Plaintiff's BIPA claim from that of any other member of the Settlement Class. Like the rest of the Settlement Class Members, she used facial recognition at an ordering kiosk sold by Nextep at a Wow Bao store, causing her facial-geometry data to be sent and stored to a cloud database hosted and administered by Nextep. And as with the rest of the Settlement Class Members, Nextep did not obtain a written release from Plaintiff before collecting, otherwise obtaining, and storing her facial-geometry data. In other words, Plaintiff was subject to the same conduct and practices by Nextep as everyone else, and her claims will "stand or fall on the same facts" as everyone else's claims. *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 534 (N.D. Ill. Sep. 25, 1995). Typicality is therefore satisfied.

**D.      The Adequacy Requirement is Satisfied.**

The final Rule 23(a) prerequisite—adequacy—requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is twofold: "adequacy of the named plaintiff's counsel, and the

adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584 (7th Cir. 1993)). To assess adequacy, courts examine whether "the named plaintiff has [(1)] antagonistic or conflicting claims with other members of the class; or (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)) (quotation marks omitted).

Here, both Plaintiff and proposed Class Counsel have and will continue to adequately represent the Settlement Class. Because Plaintiff suffered the same alleged injury as every other member of the Settlement Class—the collection, otherwise obtainment, storage, and disclosure of their biometric data without their informed written consent during the class period—her interest in redressing Nextep's alleged violations of BIPA is identical to the interests of all other members of the Settlement Class. Thus, Plaintiff does not have any interests antagonistic to those of the Settlement Class. Consequently, Plaintiff's interests are entirely representative of and consistent with the interests of the Settlement Class.

As far as Class Counsel is concerned, proposed Class Counsel Stephan Zouras, LLP, is a premier plaintiffs-side employment and class action firm whose founders and partners have been consistently recognized as Illinois "Super Lawyers."[4] For over 13 years, Stephan Zouras, LLP, has

---

[4] *See* https://profiles.superlawyers.com/illinois/chicago/lawyer/james-b-zouras/3e398528-2ee7-4c6d-bf77-ef609c8ca38d.html,
https://profiles.superlawyers.com/illinois/chicago/lawyer/ryan-f-stephan/3d2e4b09-091f-49d4-ad86-05d26528287a.html,

litigated almost exclusively on behalf of employees in class and collective action litigation across the United States. Given their extensive history of successfully advocating for employee-rights, Stephan Zouras, LLP, was one of the first firms to realize that Illinois employers were violating BIPA and filed the first case against an employer under the statute alleging violations of BIPA through the use of biometric timeclocks. *Doporcyk v. Roundy's Supermarkets*, 2017-CH-08092 (Cir. Ct. Cook Cty. Jun. 9, 2017). Since then, the firm has secured several favorable rulings for individuals at both the appellate and trial court levels in connection with novel issues and defenses asserted under BIPA, including that BIPA claims are not subject to arbitration as "wage and hour" claims, *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645; the Constitutionality of BIPA, *Bruhn v. New Albertson's*, 2018-CH-01737 (Cir. Ct. Cook Cty. Jan. 30, 2020) (J. Loftus); the inapplicability of BIPA's "HIPAA exemption" to employees, *e.g., Bruhn v. New Albertson's Inc., et al.*, No. 18-CH-01737 (Cir. Ct. Cook Cty. July 2, 2019) (J. Loftus); when BIPA claims accrue, specifically, that an aggrieved plaintiff's claims accrue each time an entity collects or disseminates biometric identifiers and/or biometric information without securing prior informed consent and a release, *Cothron v. White Castle System, Inc.*, 477 F. Supp. 3d 723 (N.D. Ill. 2020) (J. Tharp); that claims under Sections 15(a) and (b) of BIPA are subject to a five-year statute of limitations, *Tims v. Black Horse Carriers, Inc.*., 2021 IL App (1st) 200563 (Sept. 17, 2021); a finding of personal jurisdiction over non-resident defendants that manufacture biometric devices, *Fisher v. HP Property Management, LLC, et al.*, 2021 IL App (1st) 201372; a decision from the First District Appellate Court holding that healthcare workers' biometric data is not excluded from coverage

---

https://profiles.superlawyers.com/illinois/chicago/lawyer/andrew-ficzko/5838a1d0-62cb-4a45-b0cd-1637db0cda6a.html.

under BIPA, *Mosby v. The Ingalls Memorial Hospital, et al.,* 2022 IL App (1st) 200822 (Feb. 25, 2022); a decision from the Illinois Supreme Court affirming in part and reversing in part the Appellate Court's judgment, finding that "the five-year limitations period contained in section 13-205 of the Code controls claims under the Act," *Tims v. Black Horse Carriers, Inc.,* 2023 IL 127801 at ¶ 42; and most recently, a decision from the Illinois Supreme Court holding that BIPA claims accrue not just the first time a private entity collects or disseminates biometric data without prior informed consent, but rather every time it is collected and/or disseminated. *Cothron v. White Castle System, Inc.*, 2023 IL 128004.

Stephan Zouras, LLP, has recovered over $250 million for individuals nationwide and has successfully prosecuted hundreds of class and collective actions in state and federal courts. Stephan Zouras, LLP, has also been at the forefront of BIPA settlements and has helped resolve dozens of BIPA class action cases, recovering well into the eight figures for aggrieved Illinois workers and citizens.[5]

---

[5] *See Bedford v. Lifespace Communities, Inc.*, No. 1:20-cv-04574 (N.D. Ill.) (Shah, J.); *Bradford v. Farmington Foods, Inc.*, No. 19 CH 12888 (Cir. Ct. Cook Cty.) (Mullen, J.); *Bray v. Hixson Lumber Sales of Illinois, Inc.*, No. 2019 L 9 (Cir. Ct. Montgomery Cty.) (Roberts, J.); *Bryant v. Loews Chicago Hotel, Inc., et al.*, No. 1:19-cv-03195 (N.D. Ill.) (Norgle, J.); *Bryski v. Nemera Buffalo Grove, LLC*, 2018 CH 07264 (Cir. Ct. Cook Cty.) (Gamrath, J.); *Collier, et al. v. Pete's Fresh Market 2526 Corporation, et al.*, No. 19 CH 5125 (Cir. Ct. Cook Cty.) (Atkins, J.); *Dixon v. The Washington & Jane Smith Home, et al.*, No. 1:17-cv-08033 (N.D. Ill.) (Kennelly, J.); *Drape v. SF Express Corporation*, No. 20 L 1094 (Cir. Ct. DuPage Cty.) (Chapman, J.); *Edmond v. DPI Specialty Foods, Inc., et al.*, No. 18 CH 9573 (Cir. Ct. Cook Cty.) (Tailor, J.); *George, et al. v. Schulte Hospitality Group, Inc.*, No. 18 CH 4413 (Cir. Ct. Cook Cty.) (Reilly, J.); *Goings v. AEP NVH OPCO, LLC, et al.*, No. 17 CH 14954 (Cir. Ct. Cook Cty.) (Tailor, J.); *Heard v. THC – North Shore, Inc., et al.*, No. 17 CH 16918 (Cir. Ct. Cook Cty.) (Walker, J.); *Jackson v. A. Finkl & Sons, Co., et al.*, No. 18 CH 07424 (Cir. Ct. Cook Cty.) (Tailor, J.); *Johns v. Club Fitness of Alton, LLC, et al.*, No. 18 L 80 (Cir. Ct. Madison Cty.) (Smith, J.); *Kane v. Conservation Technology of Illinois, LLC, et al.*, No. 18 CH 12194 (Cir. Ct. Cook Cty.) (Reilly, J.); *Liu v. Four Seasons Hotels, Ltd., et al.*, No. 17 CH 14949 (Cir. Ct. Cook Cty.) (Walker, J.); *Martinez v. Concord Hospitality Enterprises Company, LLC, et al.*, No. 19 CH 6848 (Cir. Ct. Cook Cty.) (Mullen, J.); *Ramos v. B O X Acquisitions LLC*, No. 20 CH 3887 (Cir. Ct. Cook Cty.) (Walker, J.); *Ripper, et al. v. Area*

Stephan Zouras, LLP, attorneys – whose experience include testifying before legislative committees on issues relating to individual rights – uniquely understand the challenges faced here, which is a meaningful benefit in representing those whose biometrics were obtained without consent or the protections provided by BIPA. The firm's accomplishments (both in and outside of BIPA) are further detailed in the firm's resume, attached as Exhibit 2-A to the Declaration of Andrew C. Ficzko. Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Declaration of Andrew C. Ficzko, attached hereto as Exhibit 2, at ¶ 8.)

Accordingly, because Plaintiff will fairly and adequately protect the interests of the class, and because she and the Settlement Class are amply represented by qualified counsel, the adequacy requirement is satisfied.

### E. A Class Action is a Superior Method of Resolving the Controversy.

Rule 23(b)(3) additionally requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule sets forth four criteria germane to this requirement. All counsel are in favor of certification for settlement purposes.

---

*Disposal Service, et al.*, No. 20 CH 124 (Cir. Ct. Peoria Cty.) (Brown, J.); *Terry v. Griffith Foods Group, Inc.*, No. 19 CH 12910 (Cir. Ct. Cook Cty.) (Walker, J.); *Thomas v. KIK Custom Products, Inc.*, No. 19 CH 2471 (Cir. Ct. Cook Cty.) (Cohen, J.); *Thome v. Flexicorps, Inc.*, No. 18 CH 1751 (Cir. Ct. Cook Cty.) (Demacopoulos, J.); *Thurman v. Northshore University Healthsystem*, No. 18 CH 3544 (Cir. Ct. Cook Cty.) (Walker, J.); *Torres v. Eataly Chicago, LLC*, No. 20 CH 6417 (Cir. Ct. Cook Cty.) (Walker, J.), *Trayes v. Mid-Con Hospitality Group, LLC, et al.*, No. 19 CH 1117 (Cir. Ct. Cook Cty.) (Conlon, J.); *Trottier v. Summit Staffing, Inc.*, No. 19 CH 2731 (Cir. Ct. Cook Cty.) (Conlon, J.); *Van Jacobs v. New World Van Lines, Inc.*, No. 19 CH 2619 (Cir. Ct. Cook Cty.) (Meyerson, J.); *Watts v. Aurora Chicago Lakeshore Hospital, LLC, et al.*, No. 17 Ch 12756 (Cir. Ct. Cook Cty.) (Reilly, J.).

The first factor, individual class members' interest in individually controlling the action, Fed. R. Civ. P. 23(b)(3)(A), weighs in favor of certification. This matter was brought as a class action. While BIPA provides for statutory damages, the relatively modest recovery ($1,000 or $5,000, depending on whether a violation is negligent or reckless), compared to the high costs of retaining adequate counsel "is not likely to provide sufficient incentive for members of the proposed class to bring their own claims." *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (discussing the FDCPA's $1,000 statutory damages provision); *see also In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 549 (N.D. Cal. 2018) ("While not trivial, BIPA's statutory damages are not enough to incentivize individual plaintiffs given the high costs of pursuing discovery on Facebook's software and code base and Facebook's willingness to litigate the case.").

The second factor, the extent and nature of other proceedings, Fed. R. Civ. P. 23(b)(3)(B), also weighs in favor of certification. There are no other known actions that have progressed to any extent addressing the conduct alleged here. Thus, "'the extent and nature of any litigation concerning the controversy already begun by or against class members' is not a factor" counseling against certification. *Bernal v. NRA Group, LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016) (quoting Fed. R. Civ. P. 23(b)(3)(B)).

Third, it is desirable to concentrate the litigation—and to undergo the settlement approval process—in this forum, *see* Fed. R. Civ. P. 23(b)(3)(C), given that this case concerns a proposed class of plaintiffs who used a biometric facial-recognition kiosk at a Wow Bao restaurant in Illinois. *Barnes*, 310 F.R.D. at 562 (third factor met where defendant conducted business and the events giving rise to plaintiffs' claims occurred within the court's district); *Ramirez v. GLK Foods,*

*LLC*, No. 12-C-210, 2014 WL 2612065, at *9 (E.D. Wis. June 11, 2014) (events in forum giving rise to lawsuit support concentration in the forum).

Finally, the fourth factor - "the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—also weighs in favor of certification, as no management problems ought to arise here. There is clear predominance of common issues, as explained above. *Bernal*, 318 F.R.D. at 76; 2 NEWBERG ON CLASS ACTIONS § 4:72 (5th ed. 2011) ("Courts generally hold that if the predominance requirement is met, then the manageability requirement is met, as well."). Thus, consolidating Class Members' claims in one proceeding will generate economies of time and expense and promote legal uniformity.

More generally, Rule 23's superiority standard requires that the court recognize "the costs *and benefits* of the class device." *Mullins*, 795 F.3d at 663 (emphasis in original). Here, requiring individual cases "would make no sense," because "each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal*, 318 F.R.D. at 76. The class action device, on the other hand, allows the Court to swiftly evaluate common issues surrounding Nextep's alleged violations of BIPA in a single proceeding, generating a uniform result that will apply to all similarly situated persons. *Suchanek*, 764 F.3d at 759 (stating that "promot[ing] uniformity of decision as to persons similarly situated" is a goal of class actions) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). Without class-wide adjudication of these claims, 1,369 individuals would have to sue one-by-one to recover on these relatively modest individual claims. *See* 740 ILCS 14/20(1). The cost of litigating BIPA claims on an individual basis—including the cost of discovery, motion practice, biometric data experts, and trial—would be prohibitively expensive. Moreover, such individual claims would

clog the courts with an influx of separate actions, further delaying the possibility of relief. Rule 23's superiority requirement is therefore satisfied.

### F. The Class Is Ascertainable.

Finally, the proposed Settlement Class definition meets Rule 23's implicit requirement of "ascertainability," which "requires that a class . . . be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Whether a class is ascertainable depends on 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class.'" *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill. 2018) (citing *Mullins*, 795 F.3d at 658).

Here, the Settlement Class definition is based solely on objective criteria: whether the individual used facial recognition at an ordering kiosk sold by Nextep at a Wow Bao restaurant in Illinois during the relevant period of time. (Settlement Agreement ¶ 67.) Because the class is "defined clearly [and] membership [is] defined by objective criteria," it is ascertainable. *Mullins*, 795 F.3d at 657. For these reasons, maintenance of this action as a class action is appropriate. The Court should therefore certify the Settlement Class for settlement purposes.

## V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [with the] ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above,[6] proposed Class Counsel have extensive experience in litigating class actions in general, and BIPA class actions specifically; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. (*See* Ficzko Decl. ¶¶ 4-6, 8, 12.) And because of their efforts here, proposed Class Counsel have secured a Settlement that provides excellent monetary relief and the prospective relief necessary to protect the privacy interests of Settlement Class Members. Thus, the Court should appoint Ryan F. Stephan, James B. Zouras, and Andrew C. Ficzko of Stephan Zouras, LLP, as Class Counsel.

## VI.   **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

Rule 23(e) requires judicial approval of all proposed class action settlements. The procedure for review of a proposed class action settlement is a familiar two-step process— preliminary and final approval—which was codified under Rule 23(e) relatively recently. Fed. R. Civ. P. 23(e)(1)-(2) (eff. Dec. 1, 2018); *see* 4 NEWBERG ON CLASS ACTIONS § 13:1 (5th ed.). The first step—preliminary approval—is a pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B). In other words, at this stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 & n.3 (7th Cir. 1982). Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step: the final fairness determination. *Id.* at 621.

While "[f]ederal courts naturally favor the settlement of class action litigation," a multi-

---

[6] Courts frequently analyze counsel's adequacy under both 23(a)(4) and 23(g), which is why it is discussed twice here. 1 NEWBERG ON CLASS ACTIONS § 3:56 (5th ed.); *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592–93 (7th Cir. 2011), *as modified* (Sept. 22, 2011) (reviewing counsel's adequacy under Rule 23(a)(4) but mentioning the Rule 23(g) factors in its analysis).

factor test must be used to determine whether the proposed settlement is likely to be found fair, reasonable, and adequate. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)) (internal quotations omitted). Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see*, *e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at \*4 (N.D. Ill. May 14, 2019).[7]

The proposed settlement here will provide outstanding monetary and prospective relief to Settlement Class Members without releasing any claims they may have against Wow Bao, LLC, and its related entities. (*See* Settlement Agreement ¶ 57.) It should be approved.

### A.      Plaintiff and Proposed Class Counsel Have Adequately Represented the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment;

---

[7] Notably, the factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at \*2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). For this reason, decisions prior to the amendment can still provide guidance to the Court.

*see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506, at *3 (M.D. Ga. Jan. 17, 2019). In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiff participated in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation. *See Snyder*, 2019 WL 2103379, at *4.

Here, Plaintiff has been involved in nearly every aspect of this case, including by helping her attorneys investigate her BIPA claims, assisting in responding to substantial written discovery, sitting for a 7-hour deposition, conferring with counsel throughout the litigation, and reviewing and approving the Settlement Agreement before signing it. (Ficzko Decl. ¶ 13.) Without Plaintiff stepping up to represent the class and taking on these tasks, the relief secured for the Settlement Class wouldn't have been possible. Given her efforts and aligned interest with the class, there can be no doubt that Plaintiff has only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, proposed Class Counsel's performance in this case demonstrates that their representation has been beyond adequate, especially when considering (i) the amount and quality of discovery conducted and (ii) the benefits of the Settlement compared to similar privacy settlements, including those under BIPA. By the time the Settlement was agreed to in principle, the considerable amount of written and oral discovery completed by Plaintiff's counsel ensured that they had adequate information to assess the strength of the case and negotiate a fair deal. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill.

July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the court and parties have enough information "to evaluate the merits of this case"). In addition to written discovery, Plaintiff took the depositions of current and former Nextep employees, including Kevin Varga, a former employee of Nextep who worked on development of the software at issue and the interface to Wow Bao's Micros 3700 point of sale system, as well as Brian Leary, who serves as Nextep's current Vice President of Software Development. Each of those deponents provided crucial testimony about the marketing, functionality, or deployment of the facial-recognition kiosks at issue in this case. In short, the issues in this litigation have crystallized sufficiently for Plaintiff and her counsel to assess the strengths and weaknesses of their negotiating position and evaluate the appropriateness of any proposed resolution. *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *10 (N.D. Ill. Mar. 2, 2016).

Second, the monetary relief achieved by Plaintiff's counsel in the Settlement excels in comparison to other statutory privacy settlements, including many BIPA settlements. The Settlement Fund in this case totals $616,050.00, none of which will ever go back to Nextep. (*See* Settlement Agreement ¶ 79.) Assuming a claims rate of 10-20%, the Settlement will result in a *net* payment (meaning after all fees and costs are deducted) of approximately $1,147 to $2,295 per claimant. This amount dwarfs the amounts recovered in many other statutory privacy class actions, particularly against a backdrop where settlements have commonly secured no relief to the class or only *cy pres* relief. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Privacy Litig.*, No. C

10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement). Some BIPA settlements, too, have depressed the amount defendants have to pay with credit monitoring, caps on the amount claiming class members can recover, and reversion of unclaimed funds. *E.g.*, *Carroll*, 2017-CH-01624 (credit monitoring only); *Marshall*, 2017-CH-14262 (paying a cap of $270 to individuals who filed claims and reverting the remainder to defendant). Even when comparing against other consumer BIPA settlements, the per-person relief provided by this Settlement is as good or better than the rest. *See Prelipceanu*, 2018-CH-15883 ($7 million fund for approximately 260,000 class members); *Miracle-Pond v. Shutterfly*, 2019-CH-07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ($6.75 million fund for potentially millions[8] of class members); *Kusinski v. ADP, LLC.*, 2017-CH-12364 (Cir. Ct. Cook Cty., February 10, 2021) ($25 million fund for approximately 320,000 class members); *Rosenbach v. Six Flags Ent. Corp.*, 2016-CH-00013 (Cir. Ct. Lake Cnty. May 14, 2021) (preliminarily approving $36 million fund for approximately 1,110,000 class members, and capping class member payments at $200 or $60 depending on date of finger scan). Using any metric, the relief secured by this Settlement— approximately $1,147 to $2,295 per claiming Class Member—is extraordinary. Furthermore, while paying Settlement Class Members hundreds of dollars for their claims against Nextep, the Settlement does *not* release any claims against Wow Bao, LLC, and its related entities, who used the facial-recognition kiosks in their restaurants. (Settlement Agreement ¶ 57.)

Finally, aside from the monetary relief, the non-monetary benefits created by the

---

[8] The settlement papers submitted in *Shutterfly* represented that there were approximately 954,000 class members, but that number only counted Shutterfly *users* in Illinois; it did not include the vast number of *non-users* who appeared in users' photographs uploaded to Shutterfly and who were included in the settlement class definition.

Settlement also demonstrate Plaintiff's and proposed Class Counsel's outstanding representation of the class. (*See* Settlement Agreement ¶ 115.) Nextep agrees to delete and cease retaining, within a reasonable time, but no later than 90 days, after the full execution and approval of the Settlement Agreement, any customer data received from the Wow Bao kiosks, provided Plaintiff and the Wow Bao entities stipulate and agree that such destruction will not constitute spoliation or otherwise violate any contractual, legal, or equitable obligation to store or maintain such data. (*Id.*) This prospective relief aligns perfectly with both the goals of BIPA and those of this lawsuit, as it will ensure that Illinois Wow Bao customers who used the facial-recognition kiosks are protected as the legislature intended. *See Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1207 (Ill. 2019) (noting that "the point of [BIPA]" is to "prevent problems before they occur and cannot be undone").

If the Settlement is approved, the Settlement Class will reap its valuable benefits thanks to Plaintiff's and proposed Class Counsel's hard work pursuing this case and representing their interests. This factor is well satisfied.

**B.      The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.**

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's-length. Fed. R. Civ. P. 23(e)(2)(B). The answer here is easy: yes. Plaintiff actively litigated this case for approximately two years, including substantial motion practice, significant written discovery, and multiple depositions. *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation, participated in two prior mediations, and engaged in discovery" prior to reaching settlement). These discussions ultimately led to a settlement conference with the Honorable Magistrate Judge McShain on November 15,

2022. (Ficzko Decl. ¶ 9.) While productive, the settlement conference did not end in immediate settlement, and the Parties proceeded with litigation for another month, including Defendant filing of a motion for summary judgment and Plaintiff filing a [renewed] motion for class certification. (*Id.*) During that time the Parties still continued to discuss settlement and they agreed to participate in a second settlement conference with the Honorable Magistrate Judge McShain on December 19, 2022. (*Id.*) Although the Parties again were unable to reach an agreement at that time, they further agreed to continue discussing a possible resolution. (*Id.*) Their efforts culminated in an agreement to resolve this matter in principle on January 11, 2023. (*Id.*) The Parties then spent the next several weeks drafting and negotiating the finer deal points of the final Settlement Agreement before executing it in February 2023. (*Id.*) *See Young v. Rolling in the Dough, Inc*, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (finding the settlement agreement is "clearly" the product of arm's-length negotiations after it was agreed to after a contested motion, extensive discovery and discovery disputes, and a settlement conference).

The arm's-length nature of these negotiations is further confirmed by the Settlement Agreement itself: it is non-reversionary, provides significant cash payments to Settlement Class Members who submit a simple Claim Form, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation").

For these reasons, there should be no question that the Settlement Agreement was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting

that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### C. The Settlement Treats All Settlement Class Members Equally.

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, given that each Class Member has nearly identical BIPA claims for monetary and injunctive relief against Nextep, the proposed Settlement treats each of them identically. In terms of monetary relief, Nextep has agreed to create a non-reversionary Settlement Fund, from which each Class Member who submits a valid Claim Form will receive a single, *pro rata* payment by check. (Settlement Agreement ¶¶ 76-77); *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). The Settlement also provides for identical prospective relief requiring Nextep to take steps to ensure compliance with BIPA by deleting and ceasing to retain Settlement Class Members' data received from the Wow Bao kiosks. (Settlement Agreement ¶ 115.) Further, each Class Member will release the same BIPA claims against Nextep, and all will retain their claims against Wow Bao, LLC and its related entities. (*Id.* ¶¶ 56-57.)

Likewise, the provision of a Service Award to Plaintiff for serving as Class Representative is consistent with the equitable treatment of class members. The requested $10,000 Service Award is not only modest relative to the Settlement Fund that Plaintiff has helped secure for the Settlement Class, it also reflects the significant work she has done for the Settlement Class, which as described above, included conferring with counsel regularly, answering written discovery, sitting for a 7-hour contentious deposition, and participating in the settlement process. Moreover, an award of this size is squarely in line with other service awards given to class representatives in BIPA cases.

*See Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-8033, dkt. 103 (N.D. Ill. May 31, 2018) ($10,000 service award) (Kennelly, J.). Given that Plaintiff's efforts were key to securing the outstanding relief provided by the Settlement, the modest proposed Service Award is fully consistent with equity. Because the Settlement treats each member of the Settlement Class equitably, this factor is well satisfied.

### D. The Relief Secured for the Settlement Class Is Adequate and Warrants Approval.

The final and most substantive factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to consider several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *Id.* As explained below, each of these sub-factors demonstrate that the relief provided by the Settlement is excellent—well beyond adequate—and should be approved.

#### 1. The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval.

In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment.

The Settlement here warrants approval because it provides immediate relief to the Settlement Class while avoiding potentially years of complex litigation and appeals and the risk that comes along with it. *See Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). Nextep asserted 23 affirmative

defenses. (Dkt. 12.) For example, one of Nextep's defenses in this case was its contention that even though it did not obtain the consent Plaintiff contends is required by the plain language of the statute, some other form of express and/or implied consent still precluded its liability because the Class Members voluntarily chose to use the facial recognition kiosks. Plaintiff put little stock in this argument, but it is likely that it would come down to a battle for the Court or jury to decide at a trial. The determination of complex factual and/or legal issues by the Court or jury is an inherently uncertain proposition, particularly compared with the certain relief offered by this Settlement.

Likewise, the Parties also would have been forced to litigate the issue of class certification adversarially. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor); *see also Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *6 (S.D. Cal. May 13, 2020) ("Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class."). Although Plaintiff believes this case is amenable to class certification given Nextep's uniform conduct, *see In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. at 549 (certifying Rule 23(b)(3) class of Facebook users in Illinois for whom Facebook created and stored a face template), and that she would ultimately prevail on certification issues, that process is by no means risk-free. That isn't to say that the Court can ignore questions regarding the propriety of class certification; as discussed above, it cannot. The important point is that in the context of settlement, Nextep doesn't object to certification of the class, which permits the Court to focus its class certification analysis on protecting absent class members without worrying about the effect of certification on Nextep. *See Mullins*, 795 F.3d at 669 (explaining that defendants also have due process rights that can affect certification). This

Settlement provides excellent relief to the Settlement Class Members now, avoiding years of delay to resolve these questions.

Protracted litigation would also consume significant resources, including the time and costs associated with moving forward with briefing and arguing the pending motion for summary judgment and [renewed] motion for class certification, trial, and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide Class Members with either no in-court recovery or some recovery many years from now[.]" *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement offers immediate—and substantial—monetary relief to the Settlement Class while avoiding the need for extensive and drawn-out litigation, preliminary approval is appropriate. *See*, *e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 2. The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval.

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). Courts have held that requiring a claimant to fill out a short and simple claim form is an appropriate way to balance these concerns, especially in settlements with non-reversionary funds. *See In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous."); *Schulte*, 805 F. Supp. 2d at 591 ("[T]he

Court has reviewed the claim form and concludes that it is not unduly burdensome, long, or complex. All information called for on the form is required of the claims administrator in order for it to process claims."); 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

The proposed Settlement here satisfies this factor by relying on well-established, effective methods for processing Class Members' Claim Forms and distributing the proceeds of the Settlement. The Settlement Fund will be distributed to Class Members who submit a short and simple Approved Claim, by mail or online, to the Settlement Administrator—an independent third party with extensive experience handling the administration of settlement funds. (*See* Settlement Agreement Ex. A.) Each person in the Settlement Class will have the option to mail in a Claim Form or alternatively, submit their Claim Form online through the Settlement Website. (*Id.* ¶¶ 36-37, 86.) The Settlement Administrator will provide Class Members with resources (including a website, mailing address, and toll-free phone number) to contact the Settlement Administrator or Class Counsel directly, review and process the Claim Forms, and then disperse to Class Members their *pro rata* share of the Settlement Fund upon approval of the Court. (*Id.* Ex. B.) This distribution method is effective and supports approval.

### 3.    The terms of the requested attorneys' fees are reasonable.

The third and final relevant sub-factor[9] considers the adequacy of the relief provided to the class taking into account "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, proposed Class Counsel plan to petition the Court for an award of reasonable attorneys' fees after the

---

[9] The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the Parties' proposed Settlement. (Ficzko Decl. ¶ 11.) Since there are no side agreements to be identified, this sub-factor weighs in favor of preliminary approval.

Settlement Class has received notice of the Settlement. The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method), and its limit on attorneys' fees (i.e., no more than 35% of the non-reversionary Settlement Fund) is reasonable and predicated on the outstanding relief provided to the Settlement Class. (Settlement Agreement ¶ 99.) In fact, the percentage-of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and a 35% award will adequately capture the hypothetical *ex ante* agreement that the Settlement Class would have entered into with proposed Class Counsel had they sought them out in the market, given the risks in the case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011); *e.g.*, *Lopez-McNear v. Superior Health Linens, LLC*, No.19-cv-2390, dkt. 69 (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, dkt. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund); *Sekura*, 2015-CH-16694 (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *Svagdis v. Alro Steel Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *see also* 5 NEWBERG ON CLASS ACTIONS § 15:83 (5th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Accordingly, that the Settlement permits the Court to award 35% of the fund in attorneys' fees is more than appropriate. Finally, if approved, the Settlement provides that attorneys' fees will be paid within three calendar days after the Effective Date. (Settlement Agreement ¶ 112.) These terms are reasonable and should be preliminarily approved.

For these reasons, Plaintiff and proposed Class Counsel submit that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair,

reasonable, and adequate, and well within the range of possible approval. The Court should grant preliminary approval.

## VII.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)[,] the court must direct to class members the best notice that is practicable under the circumstances … ." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement, voluntary dismissal, or compromise.]" Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (eff. Dec. 1, 2018). The substance of the notice to the Settlement Class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the Settlement Class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement contemplates a comprehensive Notice plan. First, the Parties agree to jointly request that Wow Bao allow posting at its Wow Bao restaurants. (Settlement Agreement ¶ 85.) Additionally, publication of the Notice will be by: (1) Internet Notice: the Settlement Administrator will develop, host, administer, and maintain a Settlement Website containing the Notice with a call center and phone operators. The Settlement Administrator will be identified as the primary contact for inquiries and Class Members will be directed to contact the Settlement Administrator with all communications regarding the settlement; (2) Targeted Advertising: the Settlement Administrator my place targeted advertisements on the leading business social

platforms (*e.g.,* LinkedIn), the top social media platforms (*e.g.,* Facebook), the largest digital networks (*e.g.,* Google), programmatic partners, and any other appropriate platforms reasonably targeted at members of the Settlement Class, which shall direct them to the Settlement Website; and/or (3) Print Publication: the Settlement Administrator may provide print publication notice by placing a one-time eighth of a page summary publication notice in some or all appropriate newspapers circulating in Illinois including, but not necessarily limited to: Arlington Daily Herald, Belleville News Democratic, Bloomington Pantagraph, Champaign News-Gazette, Chicago Sun Times, Chicago Tribune, Northwest Herald, Peoria Journal Star, Rockford Register Star, and/or Springfield State Journal-Register. (*Id.* ¶¶ 85(a), (b), (c).)

All of the Notice documents are written in plain, easily-understood language. The Notice will inform Settlement Class Members, prior to the Final Approval Hearing, that there is a pending Settlement, and to further inform Settlement Class Members how they may: (1) participate in the Settlement, (2) protect their rights regarding the Settlement, (3) request exclusion from the Settlement Class and the proposed Settlement, if desired, (4) object to any aspect of the proposed Settlement, if desired, and (5) participate in the Final Approval Hearing, if desired. (*See Id.* Ex. B.) The Notice shall make clear the binding effect of the Settlement on all persons who do not timely request exclusion from the Settlement Class. (*Id.*) Finally, the Settlement Administrator will create, launch, and maintain a Settlement Website, which will provide access to relevant settlement administration documents, including the Notice, relevant court filings, and the ability to submit Claim Forms online. (*Id.* ¶ 64.) The Settlement Website shall be live and active by the Notice Date. (*Id.*)

Because the proposed Notice plan effectuates Notice in the best practicable manner under the circumstances and fully apprises Settlement Class members of their rights, it comports with

34

both Rule 23 and Due Process. Consequently, the Court should approve the Parties' proposed Notice plan.

## VIII.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement and Release, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the Notice to the members of the Settlement Class, (iv) appointing Plaintiff Regina Morris as Class Representative, (v) appointing Stephan Zouras, LLP, as Class Counsel, (vi) enter the proposed Preliminary Approval Order, attached hereto as Exhibit 3, (vii) scheduling a final fairness hearing in this matter, and (viii) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**Regina Morris**, individually, and on behalf of all Others similarly situated

Dated: March 6, 2023

By: */s/ Andrew C. Ficzko*___
One of Plaintiff's attorneys

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
**Stephan Zouras, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on March 6, 2023, he electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

<i>/s/ Andrew C. Ficzko</i>